IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PATRICK COX and MELANIE TELLOR, )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>ARTHUR JOHN BIGLER, State's )<br>Attorney of Union County, and JAMES )<br>TEMPLE, State's Attorney Investigator, )<br>)<br>Defendants. ) | CIVIL NO. 04-4019-JLF |

## MEMORANDUM AND ORDER

**FOREMAN, District Judge:**

Before the Court are defendants' joint motion for summary judgment as to plaintiff Patrick Cox, (Doc. 59), and Melanie Tellor (Doc. 60). Plaintiffs have filed responses (Docs. 62,63) and defendants have filed a reply (Doc. 66). Defendants' motions are discussed below.

**I.   Background.**

The following facts are not in dispute. On May 5, 2002, a girl named Amber Griffin gave a statement to police officers that she had been sexually abused by a man named Rickie Tellor. (Doc. 59, Exh. C). The next day, on May 6, 2002, Ricky Tellor signed a voluntary statement that he did indeed commit the offense. (Doc. 59, Exh. B).

Sometime near the end of May, 2002, Ricky Tellor's wife, plaintiff Melanie Tellor, took another girl, Ashley Freeman to the Union County Courthouse to meet with plaintiff Patrick Cox. At the time, Attorney Cox was the Union County Public Defender and was

representing Rickie Tellor. (Doc. 59, Exh. O, ¶1). At this meeting, Attorney Cox asked Freeman if she would be willing to tape record a conversation between herself and Amber Griffin to get Griffin to say that she had falsely accused Ricky Tellor of sexual molestation. (Doc. 59, Exh. O, ¶4). Freeman states that Cox's secretary brought her a tape recorder. (Doc. 59, Exh. O, ¶5). Freeman also states that Cox told her she would be a witness in Tellor's prosecution and that when testifying, she should not reveal that it was Cox's idea to record the conversation, and that she should say that she had received the recording device from someone other than Cox. (Doc. 59, Exh. O, ¶8).

Freeman then met with Griffin. During the conversation, (which Freeman recorded), Griffin stated that she was molested by Tellor. (Doc. 59, Exh. O, ¶¶10,11). Freeman gave the tape recording to Melanie Tellor who later informed Freeman that the tape-recorded conversation was insufficient, and that Freeman needed to tape Griffin again. (Doc. 59, Exh. O, ¶12). During this second conversation, (which Freeman also recorded), Freeman asked Griffin to help put Freeman's father in jail by fabricating a sexual allegation against him. (Doc. 59, Exh. O, ¶13). Specifically, Freeman states in her affidavit that:

> 13. I again met with Amber Griffin, and during the taping of that conversation I asked Griffin to help put my father in jail by making up an allegation of sexual abuse against my father. The goal of both recordings was to try to get Amber Griffin to say she had lied about Ricky Tellor. I did not actually plan to make a false allegation against my father. *Prior to recording the conversation I did not have any suspicion that Amber was going to make a false claim against my father.* I brought up the subject *not because I suspected Amber was going to commit a crime against me or my immediate family but because I was*

> *trying to get Amber to say something that would help Rickie Tellor.*

*(Doc. 59, Exh. O, p.3) (emphasis added).*

As noted, according to Freeman, the goal of both conversations was to get Griffin to say that she had lied about her allegations against Rickie Tellor. (Doc. 59, Exh. O, ¶13).

On July 5, 2001, defendant James Temple was interviewing Freeman on an unrelated matter. At the end of the interview, Freeman volunteered that Rickie Tellor was innocent and that she had tape recorded Amber Griffin admitting that she had lied about the charges. (Doc. 62, Exh. 1, p.18 of 37). Freeman also told Temple that she had given the tape recording to Attorney Cox. (Doc. 62, Exh. 1, p.18 of 37). Investigator Temple then informed defendant John Bigler, Union County State's Attorney.

On July 9, 2002, Temple and Bigler met with Freeman and her mother. (Doc. 59, Exh. K, ¶6). Freeman explained to defendants that she had met with Attorney Cox and that he had asked her to elicit and to tape record statements from Griffin that she had falsely accused Rickie Tellor of sexual molestation. (Doc. 59, Exh. K, pp.2-8). Freeman also gave a hand-written statement that describes the events that led to her tape-recording Amber Griffin. (Doc. 59, Exh. E). This statement does not mention that Freeman suspected that Amber Griffin either had, or was going to, falsely accuse Freeman's father of molestation. (Doc. 59, Exh. E). The statement specifically notes that Attorney Cox asked Freeman if he could "get [Amber] on tape," saying that she fabricated allegations against Rickie Tellor. (Doc. 59, Exh. E).

Due to a learning disability, Freeman asked that her statement be typed. (Doc. 59, Exh. E). As such, defendant Temple typed her statement, (dated July 10, 2002), at her request. (Doc. 59, Exh. N). Both Freeman and her mother, (Annie Freeman), signed this statement. (Doc. 59, Exh. N).

Freeman's statement describes the events surrounding her recording of Griffin in greater detail. Specifically, Freeman's statement notes that:

\*\*\*

> I turned on the recorder right before I started talking to Amber. I asked her if Rick had really touched her. Amber said yes she told me Rick was biting on her boob and playing with her. Then I left and gave the tape to Cindy who was hiding in Stephanie [sic] house. . . . Cindy listen [sic] to it and Melanie said that it was not good enough. Cindy sent me back . . . to get another tape of Amber telling a lie. . . . I asked Amber if she could help me put my dad in jail because he hits me to [sic] much. Amber said yes but he won't go away for a long time. So I asked Amber if we could do what you did to Rick, Amber said yea, we will lie about your dad.

*(Doc. 59, Exh. N, p.2).*

In early July, 2002, Attorney Bigler suspected that Cox had violated Illinois' Eavesdropping statute and filed a petition for appointment of a special prosecutor. (Doc. 59, Exh. F). The Honorable Judge Hinshaw, First Judicial Circuit, Union County, Illinois, granted the petition and appointed Special Prosecutor David Rands. (Doc. 59, Exh. G).

On July 10, 2002, Investigator Temple requested a search warrant to search Cox's office for the tape recording and for other evidence of the crime of Eavesdropping under 720 ILCS 5/14. (Doc. 59, Exh. K). Special Prosecutor Rands approved the warrant petition, and

Judge Hinshaw issued the warrant. (Doc. 59, Exh. L).

On July 12, 2002, Special Prosecutor Rands charged Attorney Cox with Eavesdropping, and charged Melanie Tellor with Eavesdropping and with Contributing to the Delinquency of a Minor with Eavesdropping. (Docs. 59, Exh. G, pp.1-2; Doc. 60, Exh. A). Attorney Rands has submitted an affidavit stating that he alone made the decision to charge plaintiffs, and that Attorney Bigler did not influence, or attempt to influence, his decision. (Doc. 59, Exh. G, ¶3).

The Illinois' Eavesdropping statute states that:

**5/14-2.  Elements of the offense; affirmative defense.**

§ 14-2.  Elements of the offense; affirmative defense.

(a) A person commits eavesdropping when he:

> (1) knowingly and intentionally uses an eavesdropping device for the purpose of hearing or recording all or any part of any conversation or intercepts, retains, or transcribes electronic communications unless he does so (A) with the consent of all of the parties to such conversation or electronic communication . . .

*720 ILCS 5/14-2 (West 2003).*

There are at least eleven (11) exemptions, one of which states that:

- 5 -

**5/14-3. Exemptions.**

***

> (I) Recording of a conversation made by or at the request of a person, not a law enforcement officer, or agent of a law enforcement officer, who is a party to the conversation, under *reasonable suspicion that another party to the conversation is committing, is about to commit, or has committed a criminal offense against the person or a member of his or her immediate household*, and there is a reason to believe that evidence of the criminal offense may be obtained by the recording.

*(720 ILCS 5/14-3(i)) (West 2003) (emphasis added)*.

Special Prosecutor Rands also states that at the time he charged Attorney Cox, he was aware that Cox claimed that his conduct fell within an exemption to the Eavesdropping statute. (Doc. 59, Exh. G). It was Rands' opinion, however, that Cox's conduct did not fall within the exemption, because there was no evidence that Ashley Freeman had a reasonable suspicion that Amber Griffin was committing or about to commit a criminal offense against Freeman or a member of Freeman's immediate family. (Doc. 59, Exh. G). Nonetheless, Cox filed a motion to quash the indictment on that basis.

On July 7, 2003, the Honorable Judge Lewis, First Judicial Circuit, Union County, Illinois, held a hearing on Cox's motion to quash. (Doc. 59, Exh. H). After the hearing, Judge Lewis concluded that Special Prosecutor Rands did not adequately explain one of the statute's exemptions. Specifically, Judge Lewis' Order notes that:

> The Eavesdropping statute is a complicated and confusing statute. There are at least eleven exceptions to the operation of this statute.

*(Doc. 59, Exh. H, p.1)*.

Judge Lewis also noted that there is an exemption to Eavesdropping that applied in this case. Specifically, citing 720 ILCS 5/14-3(i), (which is an exemption to the Eavesdropping statute, 720 ILCS 5/14-2), Judge Lewis noted that:

> No consent is required if the eavesdropper is recording a conversation concerning a crime directed at a family member of the eavesdropper.

*(Doc. 59, Exh. H, p.2) (citing 720 ILCS 5/14-3(i)).*

Judge Lewis also found that there was sworn evidence of Ashley Freeman before his court that, if believed, would come within the scope of exemption (i) to 720 ILCS 5/14-2. As such, Judge Lewis commented that:

> This was known by the State at the time the Grand Jury met. Fairness requires that this relevant exception also be explained to the Grand Jury.

*(Doc. 59, Exh. H, p.2).*

Accordingly, Judge Lewis found that Special Prosecutor Rands did not adequately explain exemption (i) to the grand jury, thus, he dismissed the charges against Cox, (Doc. 59, Exh. H), and against Tellor.

When considering whether to re-indict plaintiffs, Prosecutor Rands concluded that the complexity of the Eavesdropping statute would make it difficult for a jury to understand the charge and applicable defenses. (Doc. 59, Exh. G). As such, Attorney Rands estimated that the likelihood of a conviction was minimal and decided not to re-indict plaintiffs. (Doc. 59, Exh. G). On September 23, 2004, Rickie Tellor pleaded guilty to Aggravated Criminal Sexual Abuse. (Doc. 59, Exh. A).

Plaintiff Cox originally sued State's Attorney Bigler, Investigator Temple, and two police officers under 42 U.S.C. § 1983 for alleged violations of his Fourth and Fourteenth Amendment rights. In a separate lawsuit, Melanie Tellor sued Bigler, Temple, and one of the police officers also under 42 U.S.C. § 1983 for violations of her Constitutional rights, as well as for malicious prosecution. *(Case No. 04-4117-JLF, Doc. 1)*. Melanie Tellor's case has been consolidated into this action pursuant to Federal Rule of Civil Procedure 42. *(See Case No. 04-4117-JLF, Doc. 19)*. The two police officers have been dismissed with prejudice by stipulation, leaving State's Attorney Bigler and Investigator Temple as the remaining defendants. (Docs. 54,67). Defendants' motions for summary judgment are discussed below.

**II.     Summary Judgment Standard.**

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56. The initial burden of showing that no genuine issue of material fact exists is on the moving party. *Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1267 (7th Cir. 1996). Once the moving party has demonstrated the absence of any genuine factual issues, the nonmoving party, to withstand summary judgment, must present specific facts showing that a genuine issue exists for trial. FED.R.CIV.P. 56(e). A genuine issue of material facts exists only where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 447 U.S. 242, 249 (1986).

**III.    Discussion.**

### A.     Defendants are Entitled to Immunity.

Defendants are entitled to immunity.  As a prosecutor, defendant Bigler is entitled to absolute immunity.  *Alexander v. Shan*, 161 Fed.Appx. 571, 575 (7th Cir. 2005) (*citing Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993), and *Smith v. Power*, 346 F.3d 740, 742 (7th Cir.2003) ("[I]t is well-settled that prosecutors are entitled to absolute immunity for actions taken "as an advocate for the State")).  Plaintiffs, however, argue that Bigler is not entitled to absolute immunity because he was not a prosecutor in the case, and that all of his functions were investigative.  Plaintiffs are correct that a prosecutor who acts as a complaining witness or engages in purely investigatory conduct unrelated to the role of an advocate is entitled to qualified immunity only.  *See Kalina v. Fletcher*, 522 U.S. 118, 131 (1997), and *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 ( 1993).  Here, however, Bigler's actions are entitled to absolute immunity because his involvement in interviewing Freeman is exactly the sort of preliminary pre-prosecution conduct that is intimately associated with the judicial phase of the criminal process.  *See e.g., Imbler v. Pachtman*, 424 U.S. 409, 431 (1976).  Accordingly, defendant Bigler's actions are entitled to absolute immunity.

To the extent that Bigler's actions may not be protected by absolute immunity, the Court finds that Bigler's actions, as well as those of defendant Temple, are protected by qualified immunity.  Qualified Immunity shields governmental officials performing discretionary functions from liability for civil damages insofar as "their conduct could reasonably have been thought consistent with the rights they are alleged to have violated."  *Borello v. Allison*, 446 F.3d 742 (7th Cir. 2006) (*citing Sornberger v. City of Knoxville*, 434

F.3d 1006, 1013 (7th Cir.2006) (*quoting Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987)). Qualified immunity is not only a defense to liability, but an immunity from suit. *Maltby v. Winston*, 36 F.3d 548 (7th Cir. 1994).

Plaintiffs argue that defendants are not entitled to qualified immunity based on *Newsome v. McCabe*, 256 F.3d 747, 752 (7th Cir. 2001). In *Newsome*, the United States Court of Appeals held that it had been "clearly established in 1979 and 1980 that police could not withhold from prosecutors exculpatory information about fingerprints and the conduct of a lineup." *Newsome*, 256 F.3d at 752. Here, unlike *Newsome* however, plaintiffs have not met their burden of showing: 1) that plaintiffs have asserted a violation of a federal Constitutional right, and 2) that the constitutional rights were clearly established at the time of the violation. *Borello v. Allison,* 446 F.3d 742 (7th Cir. 2006). Assuming that plaintiffs have asserted the violation of a Constitutional right, (i.e., the defendants' withholding of exculpatory evidence), the inquiry into whether a right is clearly established must be undertaken in light of the "specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (*internal citation and quotation marks omitted*). It is not enough for plaintiffs to simply point to a recognized constitutional right and claim the right has been violated. Plaintiffs are required to show that a violation of that right has been found in factually similar cases, *or* that the violation was so clear that an official would realize he was violating one's constitutional rights even in the absence of an on-point case. *See Anderson*, 483 U.S. at 640 ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.").

Here, plaintiffs have failed to point to factually similar cases or otherwise show that the alleged violations were such that a reasonable official would perceive that what he is doing would violate those rights. Accordingly, defendants are entitled to qualified immunity.

**B.      Plaintiffs' Allegations are False.**

As noted, Cox and Tellor have sued Bigler and Temple under 42 U.S.C. § 1983 for alleged violations of their Fourth and Fourteenth Amendment rights, allegedly for withholding exculpatory information which plaintiffs claim resulted in their false arrests. Initially, however, the Court notes that many of plaintiffs' allegations are flatly contradicted by the record. For example, Cox's complaint alleges that Bigler knew that Rickie Tellor, (Cox's client), had been "framed." Specifically, Cox alleges that Rickie Tellor had been "falsely accused" and that his prosecution was based on a "false accusation." Cox also alleges that Bigler had "irrefutable evidence . . . to prove the frame up." Indeed, Cox alleges that Bigler and Temple, in order to perpetuate the "frame-up" of Rickie Tellor, (and as part of a personal vendetta against Cox), fabricated evidence of a crime against Cox to discourage Cox's "vigorous defense." (Doc. 1, pp.1-5).

Upon review of the record, however, it is clear that Rickie Tellor was indeed guilty of the crime with which he was charged. Plaintiffs argue that the Court should not consider Rickie Tellor's guilty plea because it was not entered until September 24, 2004, (well after this lawsuit was filed). The Court notes, however, that the day after Amber Griffin told the police that Tellor molested her, Tellor gave the police a written statement admitting the conduct. Accordingly, plaintiffs' allegation that Bigler and Temple engaged in certain

conduct so that they could "perpetuate" a "frame-up" of Rickie Tellor is blatantly false.

### C. There is No Evidence that Defendants Withheld Exculpatory Information from Prosecutor Rands.

Plaintiffs' claims against defendants are based on the allegation that Bigler and Temple concealed "exculpatory evidence" from Special Prosecutor Rands. (Doc. 62, p.1). Specifically, plaintiffs claim that Temple did not include any reference in the statement that he typed for Ashley Freeman that Freeman, (when attempting to elicit Griffin's statements that she had lied about Ricky Tellor), used "her dad as bait." Plaintiffs also complain that Bigler failed to tell Prosecutor Rands that Freeman proposed recording Griffin by getting her to say that "she wanted to get my dad, just like she got Rick." According to plaintiffs, had Rands known that Freeman had used her father to bait Griffin, Rands would have concluded that exemption (i) applied and he would have not charged plaintiffs with eavesdropping.

Upon review of the record, however, it is clear that Prosecutor Rands knew that Freeman used her father as bait when recording her second conversation with Griffin. Contrary to plaintiffs' assertions, this information is in the statement that Temple typed for Freeman. Specifically, the typed statement says:

> I asked Amber if she could help me put my dad in jail because he hits me to [sic] much. Amber said yes but he won't go away for a long time. So I asked Amber if we could do what you did to Rick, Amber said yea we will lie about your dad.

*(Doc. 59, Exh. N, p.2).*

In addition, Prosecutor Rands knew of Freeman's plan as clearly set forth in his affidavit which states:

> In fact, Ashley Freeman stated from the beginning that it was her idea to use her [Ashley's] father as 'bait."

(Doc. 59, Exh. G).

Rands' affidavit also states that:

> At the time I charged Mr. Cox, I was aware that he had made the claim that his actions fell within the exemption to the eavesdrop statute . . . With regard to Mr. Cox's claim, it has always been my opinion that this incident did not come within this exemption to the eavesdrop statute.
>
> ***
>
> I had <u>no</u> evidence that Ashley Freeman had a reasonable suspicion that Amber Griffin was committing, was about to commit, or had committed a criminal offense against Freeman or her immediate family.

(Doc. 59, Exh. N, p.2).

Based on the above, it is clear that at the time Rands charged plaintiffs, he knew they were claiming exemption from the Eavesdropping statute based on Freeman's use of her father as bait. It is also clear that Rands exercised his professional judgment and concluded that exemption (i) did not apply in these circumstances.

Plaintiffs do not dispute Rands' affidavit, nor do they offer any evidence whatsoever that either Bigler or Temple concealed Freeman's baiting scheme or any other evidence from Rands. Plaintiffs' claims, including Tellor's malicious prosecution claim, are therefore baseless and fail as a matter of law.

### D. The Record Does Not Support Applying Exemption (i).

Upon review, the record does not support applying exemption (i) to Freeman's

recordings. In other words, even if defendants had withheld evidence of Freeman's baiting scheme from Prosecutor Rands, the evidence is simply not exculpatory. It is true that Judge Lewis found that Ashley Freemans' testimony, if believed, would have supported applying exemption 720 ILCS 5/14-3(i). Judge Lewis also, however, found that the grand jury was entitled to an explanation of that exemption, and because that explanation was lacking, he dismissed the charges. Judge Lewis did not dismiss the charges because he found that exemption (i) automatically applied to the case. He simply said that Freeman's testimony, "*if believed,* would clearly come within the scope of exemption (i)." (Doc. 59, Exh. H, p.2) (*emphasis added*). In other words, had Prosecutor Rands explained exemption (i), the grand jury would have been allowed to either credit or discredit Freeman's testimony, and would have decided whether exemption (i) applied to justify plaintiffs' eavesdropping.

Here, the record before the Court does not support applying exemption (i). As noted, exemption (i) states that:

**5/14-3. Exemptions.**

\*\*\*

> (i) Recording of a conversation made by or at the request of a person, not a law enforcement officer, or agent of a law enforcement officer, who is a party to the conversation, under *reasonable suspicion that another party to the conversation is committing, is about to commit, or has committed a criminal offense against the person or a member of his or her immediate household*, and there is a reason to believe that evidence of the criminal offense may be obtained by the recording.

*(720 ILCS 5/14-3(i)) (West 2003) (emphasis added)*.

As also noted, Ashley Freeman planned to record Amber Griffin saying that she had

lied about Rickie Tellor by first getting Griffin to say she would help put Freeman's father in jail, (by fabricating criminal charges against him).  Apparently, plaintiffs believe that Freeman's scheme brings their eavesdropping within the ambit of exemption (i), (i.e, it was under reasonable suspicion that another party to the conversation (Griffin) was about to commit a criminal offense against the person (Freeman) or a member of her immediate household (Freeman's father)).

The record before this Court simply does not support a finding that Freeman's plan to use her father as bait supports applying exemption (i).  First, the Court notes that according to Freeman's affidavit, Freeman's plan to use her father as bait did not arise until after the first recording that she made of Griffin.  Indeed, it was because Freeman could not get Griffin to say she had lied about Tellor on the first recording that Freeman came up with the scheme of getting Griffin to say she would fabricate charges against Freeman's father.  Accordingly, even if Freeman's scheme of baiting Griffin with her father supports applying exemption (i), (which the Court finds it does not), the scheme was not used until the second recording.  Accordingly, there is no evidence that exemption (i) applies to the first recording.

Secondly, exemption (i) applies only when there is a "reasonable suspicion that another party to the conversation is committing, is about to commit, or has committed a criminal offense against the person or a member of his or her immediate household." *720 ILCS 5/14-3(i)*.  The Court notes that plaintiffs have set forth no evidence that Freeman's father is a member of her immediate household.  More importantly, however, the reasonable suspicion referred to in 720 ILCS 5/14-3(i) must exist prior to the making of the recording,

(i.e., in order to justify the recording). Here, Freeman did not have a "reasonable suspicion" that Griffin was going to commit a crime, rather, Freeman had no idea whether Amber was going to falsely accuse her father until Freeman planted the idea in her mind. If a person could simply bait someone into saying they will commit a crime, and then talk about unrelated matters rendering all of their comments covered by the exemption, the Eavesdropping statute and exemption (i) would become meaningless. In other words, a reasonable suspicion of criminal activity must exist prior to the tape recording and cannot be simply manufactured contemporaneously with the recording. *See People v. Nestrock,* 735 N.E.2d 1101, 1108 (Ill.App. 2 Dist. 2000) (when eavesdropper has no reasonable basis to believe that speaker is likely to have committed, commit or is likely to commit a crime, exemption (i) does not apply); and *In re Marriage of Almquist,* 704 N.E.2d 68, 70-71, (Ill.App. 3 Dist., 1998) (same).

Third, the record clearly shows that the purpose of Freeman's recording was not to record Griffin talking about committing a crime against Freeman's father. Rather, the record is clear that what plaintiffs really wanted was to get Griffin saying that she had lied about Rickie Tellor "on tape." Specifically, Freeman's typed statement notes that Attorney Cox asked Freeman if he could "get [Amber] on tape" with regard to her allegations against Rickie Tellor. (Doc. 59, Exh. N). As noted, Freeman tried to get Griffin to say she had falsely accused Rickie Tellor on the first recording. Freeman used the baiting scheme to get Griffin to say she had lied about Rickie only when Freeman could not get that on the first recording. As such, the purpose of the recording was not to gather evidence that Griffin

either had committed, was committing, or was about to commit a crime and exemption (i) simply does not apply.

For all of the above reasons, defendants' motions for summary judgment are granted. Judgment shall be entered for defendants and against plaintiffs.[1]

IV.   **Summary**.

Based upon the above, defendants' motions for summary judgment (Docs. 59,60) are **GRANTED.**  Judgment shall be entered for defendants and against plaintiffs.  A separate Judgment shall accompany this Memorandum and Order.

**IT IS SO ORDERED.**
**DATED: September 12, 2006.**

*s/ James L. Foreman*
**DISTRICT JUDGE**

---

[1]Plaintiffs also argue that the Court should not consider the "patching up" affidavit that defendants obtained from Ashley Freeman on June 9, 2006. Specifically, plaintiffs argue that Freeman testified at the hearing on the eavesdropping case and that her testimony resulted in Judge Lewis finding that the tape recording fell within exemption (i) to the eavesdropping statute. According to plaintiffs, Freeman's testimony was good enough to get Judge Lewis to dismiss the indictment against plaintiffs, and for that reason, it should not be considered by this Court.  Plaintiffs state that Freeman's affidavit "does nothing more than underscore the need for a trial to resolve the factual disputes in this case."

Interestingly, the Court notes that plaintiffs do not dispute the content of Freeman's affidavit, rather, they simply argue that it should not be used.  Specifically, plaintiffs argue that Freeman's testimony was "good enough" to get Judge Lewis to dismiss the charges against them, thus, this Court should not consider the affidavit.  This Court has already explained, however, that Judge Lewis had not decided the credibility of Freeman's testimony, rather, that was an issue for the grand jury.  Here, as noted, plaintiffs' do not dispute the credibility of Freeman's affidavit, thus, the credibility of the affidavit is not at issue.  In fact, the Court cannot find where plaintiffs have raised any genuine issues of material fact.  The record appears clear and undisputed, and Freeman's affidavit is in proper form and is admissible.  Plaintiffs' argument fails.